No. 22,828.

A. H. ANDERSON and S. E. ANDERSON, Partners, etc., *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

SHIPPING CATTLE—*Negligent Delay in Transportation—Measure of Damages*. Because of the carrier's negligence, cattle shipped to the Kansas City market did not arrive in time for Thursday's market, and were held over until Friday. Friday was a regular market day, but the market was inactive, the cattle did not sell, and they were held over until Saturday, when they were shipped to another market. *Held*, that for the purpose of computing damages resulting from shrinkage in weight consequent upon the negligent delay in delivery, the cattle were delivered for the Friday market; and that damages resulting from shrinkage subsequent to delivery should not be allowed.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed October 9, 1920. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Homer V. Gooing,* and *Howard J. Hodgson,* both of Eureka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from negligent delay in transporting cattle to market. The plaintiffs recovered, and the defendant appeals. Negligence was proved, and the only subject for consideration is damages.

The contract of shipment provided that the shipment was not to be made in any particular time, on any particular train, for any particular market, or otherwise than with reasonable dispatch. But for the defendant's negligence, however, the cattle would have arrived at the Kansas City stockyards on Thursday morning, in time to be fed and watered and placed on the Thursday market, which opened at 8 a. m. and closed at 3 p. m. The cattle did not arrive until afternoon, and it was necessary to hold them over until Friday. On Friday the market was inactive, and they did not sell. In the morn-

ing a snowstorm occurred, few buyers came into the yards, and but two sales were made of cattle of the same grade. On Saturday the cattle did not sell, and on Saturday night the plaintiffs shipped them to St. Louis. The plaintiffs claimed damages for shrinkage of the cattle below what they would have weighed had they been delivered at the proper time. This shrinkage continued until the cattle were reshipped on Saturday, and the court instructed the jury that it might allow for loss of weight for the full time. In the brief for the defendant it is said:

"The object of this appeal is to ascertain the extent of the liability of a carrier of livestock for failure to make a certain market, resulting in shrinkage in weight of the cattle on account of being held over; that is to say, for what length of time does such liability for shrinkage continue? Does it continue for as long as the owner of the cattle sees fit to keep them in the stockyards awaiting a favorable market, the cattle decreasing in weight from day to day, or does it end as soon as the owner has had opportunity to place his cattle on sale on a regular market day? This is the question which we submit for decision here."

The rule governing the controversy was stated as early as 1871, in the case of *Kansas Pacific Rly. Co. v. Reynolds*, 8 Kan. 623. The syllabus reads:

"Upon failure of a common carrier to deliver goods within a reasonable time and in good condition, the rule of damages is the difference between the value of the goods as delivered at the time and place of delivery, and their value at the same place at the time and in the condition they should have been delivered." (Syl. ¶ 2.)

In the opinion it was said:

"The contract alleged in the petition and proved was to transport cattle from Ogden to state line. It was claimed that through delay in the transportation they had depreciated in value; also, that through the improper and negligent handling of them by the employees of plaintiff in error during their transportation they had suffered injury. In regard to the depreciation by delay in transportation, it is not claimed that cattle were of less value at state line in the evening than in the morning of the 8th of January, but that cattle are constantly shrinking in weight during confinement and transportation in cars, and the longer the time of carriage the greater the shrinkage. No fall of price is claimed, but simply a diminution of quantity. If the jury found these facts against the plaintiff in error, what then became the rule of damages? Unquestionably, the difference between their value at state line and at the time and in the condition of their delivery, and the value they would have had at the same place if transported without delay or injury." (p. 631.)

The word "value" appearing in both quotations evidently referred to market value. So understood, the rule of damages stated is universally approved.

Some of the customs of the Kansas City cattle market are well understood. Stock-train schedules are arranged accordingly, and shippers and carriers know that if cattle arrive too late for the market on the day of arrival, they cannot be sold, they must be held over, and for all practical purposes delivery is made on the next market day. This court recognized these facts in the case of *Railway Co. v. Fry*, 79 Kan. 21, 98 Pac. 205. In that case the trial court instructed the jury that the measure of damages was the difference between market value at the usual time of delivery and market value on the succeeding market day. It was contended the rule of damages should have been stated as the difference between market value at time and place of delivery and market value when delivery should have been made. The court said:

"We do not see any material difference in these statements when applied to the facts of this case. The cattle should, and with proper diligence on the part of the railway company would, have reached Kansas City in time for the market of January 27. They were not delivered until the market of that day had closed. The first opportunity the shipper had to sell on the market at that place was January 28. It may very properly be said, therefore, that the market at which the cattle were delivered was that of the 28th." (p. 22.)

Taking into account this definition of time of delivery, the rule of the Reynolds case should have been stated to the jury for its guidance.

The plaintiffs say they were entitled to recover all damages which were the proximate result of negligent delay, and that because the cattle did not sell on Friday or Saturday, recovery should include loss of weight until Saturday night, when the cattle were forwarded to another market. The first proposition is sound, but the second is unsound. While the proof was that on Friday the weather was bad and buyers were few and listless, Friday was a regular market day, the market was open, and trading was done in the kind of cattle the plaintiffs offered for sale. Market conditions are affected by a great variety of circumstances, which no one can anticipate. It might occur on any active market day that some cattle placed in the pens for sale would not be sold. They would still have

market value on that day, and whether sold or unsold, the plaintiffs' cattle had a definite, provable market value per hundredweight on Friday. A carrier engages to do nothing but transport and deliver at the designated market, which may be good or may be poor on the day of delivery. Negligent delay in making delivery may be said to occasion all loss resulting from decline in weight and decline in price sustained before delivery. Delay in making delivery has no causal relation, however, to the state of the market, and when a carrier has made delivery at the designated market in due time for sale in the usual way on a regular market day, it has arrested the consequences of delay. After that, further loss of weight of cattle held over is the result of intervention of a new, independent, and unforseeable factor—fluctuation of the market.

If in this instance there had been proof that Friday was always or usually a poor market day, that cattle placed on the market on that day because of negligent failure to deliver them for Thursday's market probably would not sell, and that the carrier knew, or ought to have known, that such would be the consequence of its negligence, a different rule would apply. While there was no evidence on the subject, it is quite well known that Friday is a regular market day for fat cattle at the Kansas City market. Packers usually supply themselves so they may keep up their kill until Monday.

While the instruction given was erroneous, it does not appear to have affected the verdict. With the general verdict the jury returned the following special findings:

"No. 9. If you find for the plaintiffs, state how many pounds of shrinkage per head, if any, you find the plaintiffs' cattle sustained. Ans. 60 pounds.

"No. 10. If in answer to the last previous question you find there was some shrinkage, then state during what period of time said shrinkage occurred. Ans. While the cattle were held in Kansas City."

Proof of shrinkage was given by days—so many pounds for Thursday, so many for Friday, and so many for Saturday. One witness estimated the shrinkage at 60 pounds per head on the basis of sale on Friday. Other witnesses estimated the shrinkage for the same period at much more, and all the testimony was that it would be much more if Saturday were considered. The court is inclined to the opinion the jury based

its finding on the testimony of the witness first mentioned. Finding No. 10 does not necessarily forbid adoption of the view indicated, because it is indefinite. While it allows for shrinkage within a stated period, it does not assert that an allowance was made for any particular division of the period.

The judgment of the district court is affirmed.